This is McDonald v. Illinois State Board of Education, that's case number 4110599, for Are you splitting time? Who's arguing? Very well. Mr. Lowenstein. May it please the court, counsel. My name is Ralph Lowenstein and I'm here on behalf of Scott McDonald. Mr. McDonald was a long-time teacher employed by the Pawnee School District. He was teaching art, and during every year of his employment he had received a satisfactory evaluation. According to the hearing officer in this case, his students produced voluminous amounts of artwork, many of which were impressive. Beginning with the 2007-2008 school year, there was a new principal appointed at his school. Someone who had never been a principal before, had never taught art, had never evaluated a single teacher, and hadn't actually been in the classroom for 20 years. At the end of her first year of employment, Mr. McDonald was evaluated as unsatisfactory. And that triggered a number of procedural requirements under Article 24A of the school code. More particularly, it required the Board of Education to prepare a remediation plan. It provided for a 90-day remediation period with evaluations every 30 days, and the appointment of a consulting teacher to help Mr. McDonald successfully complete his remediation plan. The issue before the court in this case, or one of the issues before the court in this case, is whether procedural violations of the school code, the administrative regulations, the evaluation plan, and Mr. McDonald's remediation plan require the court to reverse the decision of the hearing officer in this case. I will say to you that the procedural violations are numerous, and they are done with impunity. And I would also say to the court that in my estimation, any one of these procedural violations in and of itself would be a basis for reversal. But what we have is multiple violations, which taken together, I think require reversal. While this particular court has not addressed the procedural issues under Article 24A of the school code, there are other appellate courts that have. And where they have found procedural violations to exist, they have in fact declared the dismissal to be void. Because of the limitations of time, I'm going to try to hit some of what I think are some of the most important points, and we'll have to leave the rest to a written argument. But I just want to make clear that by doing so, we're not waiving those arguments. The first procedural problem that I want to talk to you about has to do with the preparation of the remediation plan. Under Article 24A-5F, as well as the school district's evaluation plan, a district is required to prepare a remediation plan within 30 days of an unsatisfactory evaluation. In this case, the unsatisfactory evaluation occurred on the 27th of May, 2008, which would have meant that the remediation plan had to be prepared no later than June 26th, with implementation on the first day of the upcoming school year. There's no question in this case... How would the remediation plan have been of any benefit until at least the start of the next school year? Because it would have given him the opportunity to know what he had to do and take steps to prepare for it. As a matter of fact, he did do some things, even based upon the unsatisfactory evaluation, to begin preparing himself. Such as going to seek out somebody to observe their classroom, all on his own, and to inquire about how to best implement the Headline computer system where they input grades. So, it does have a benefit to give the teacher this, even when school is not in session. Certainly, a lot of preparation takes place over the summer months. But there can't be a new evaluation until the new school year starts? Correct. That's correct. We're saying that it should have been implemented on the first day, but the statute clearly says you have to prepare and provide to the teacher within 30 days of the unsatisfactory evaluation of the remediation plan. Actually, I think if you talk to teachers... But the statute also says that 30 days doesn't really matter, does it? Well, of course, that's one of the legal points that we're arguing, and I can address that at this juncture if you want me to. I don't want to interrupt your argument, so however you feel most comfortable. Well, let me address that since you raised it, and it is a point that was raised by opposing counsel. In this particular case, it took 158 days to prepare and provide to Mr. McDonald for the first time a copy of the remediation plan. The statute says you have to do that within 30 days. The last line of Section 24A-5J, which I know what the Court is referring to, says that strict compliance with the time requirement of Section 24A-5 shall not invalidate the results of the remediation plan. But what it doesn't say is you can totally disregard those timelines. It says strict compliance. It doesn't excuse all compliance. We're not talking about a situation here where they missed it by a few days or even a few weeks. We're talking about over five times the length of time allowed by the statute. But in addition to that, this provision that you're referring to, which I'm happy to answer that question because it is important, doesn't excuse compliance with the evaluation plan. It only talks about strict compliance with respect to the statute. The district's evaluation plan also provided for the 30 days in which to provide the remediation plan, which clearly wasn't done in this situation. So that, I think, is the answer to the Court's question. The district, in addition to arguing the provision which the Court has just addressed, also says that part of the reason why it took so long was that it took them... they had a difficult time finding a consulting teacher. But the statute doesn't excuse compliance with the 30-day requirement because it's difficult or inconvenient. And furthermore, I would say to you, and we've laid this out pretty much in our brief, they really made precious little effort to try to find a consulting teacher. There are vast periods of time that went by where nothing was done to try to find a consulting teacher. For the first about month and a half, well beyond the 30-day period, the only thing that they did, the absolute only thing they did, was contact the union representative and see if he had some suggestions. First of all, he didn't have any requirement that he provide that information, and secondly, there's no way that he could have provided that information if he had wanted to. Because one of the requirements is that the consulting teacher have an excellent evaluation, something which he would not have had that information. So that's the only effort they made until mid-July. Then, the superintendent sent around an email to some of his colleagues in the area to see if they had any suggestions, waited a couple more weeks to call the State Board of Education to see if they had suggestions, waited another month to basically re-contact the area superintendents for suggestions, and then waited until October, some two months later, before any other effort was made. So when they're trying to say that it was difficult to find a consulting teacher, they didn't even follow the administrative regulation which says, First thing you do is you go to the teachers in your district to see if one of them might be willing to serve in this process. Maybe you covered this by inference, but I thought I read somewhere that during the summer, there was actually a discussion between the superintendent and the union representative. Correct. Was that the one you mean where he said, do you have any suggestions, or did they actually talk? I thought I read that the union rep said something about, you know, there are timeliness issues on you guys doing what you're supposed to. Yes, they did. And the superintendent said, well, I'm acting on the advice of legal counsel. There's no question here that the principal, the superintendent, and the board attorney all knew about this 30-day requirement. And you are correct that over the summer, this was repeatedly brought to their attention by the union representative. I didn't say repeatedly. I mentioned once. Does the record show? Well, I believe that it does, yes. But yes, thank you for reminding me to cover that point. The second thing, the second procedural problem that I want to talk about has to do with the appointment of the consulting teacher. Now, this is a very critical requirement because the consulting teacher is a teacher with an excellent evaluation who is expected to help the teacher successfully complete the remediation plan. Because the idea of this, the whole premise of the evaluation plan and Article 24A is to help people correct any deficiencies which might be present. And the consulting teacher has a number of different responsibilities, including participating in the development of the remediation plan, providing advice to the teacher on how to improve performance, being informed of the results of the party's evaluation in order to provide assistance, and being informed throughout the post-evaluation conferences about the results of the evaluation. In this case, there's various procedural components of what the consulting teacher is expected to do in the statute, in the administrative regulations, in the district's evaluation plan, and in the remediation plan itself. In this case, the consulting teacher truly did virtually nothing. The consulting teacher never once, and this is extremely important in my estimation, never once observed Mr. McDonald teaching a class, not even once. Was that in that list of responsibilities and duties that you just read a few minutes ago? Yes. Repeat it for me because I didn't hear it. They're supposed to provide advice to the teachers on how to improve performance. They can't do that without actually seeing the person teach. Logically, that kind of makes sense to me, but it doesn't specifically say that the consulting teacher must observe. No, you are correct. But as you said, logically speaking, how can you do this without actually seeing the person teach? But let's assume that they can. Let's assume that there's another method they can do that. I suppose they could read the evaluations and see what the evaluations say. But in this case, the district never provided any copies of any of the evaluations to the consulting teacher. I suppose conceivably they could do it by attending the pre- or the post-evaluation conferences with the administration. But in this case, that didn't happen either. So it sort of eliminates any of the possible ways that you could actually give advice to somebody if you don't do any of these things. But really what's worse in this case than them not doing any of these things, than Mrs. Howard not doing any of these things, is that the district understood from the very beginning that the consulting teacher didn't want to participate in this stuff. She said, I'm not going to be involved in the evaluation process. So if a school district cannot locate a cooperating consulting teacher, they can never prevail in these kinds of cases? Your Honor, they can always find a consulting teacher. This was the only consulting teacher available that they were able to locate. This is the only consulting teacher that they found. But that doesn't mean they made much of an effort. They didn't do, in the administrative regulation, it lays out a procedure by which they're supposed to go to. One of the things is contact the teachers in your district who qualify, which you have to have an excellent evaluation, to see if any one of them are willing to participate. They didn't even do that. I mean, there are other art teachers in the area. This is not the edge of the moon. We have a lot of school districts around here, and it doesn't have to be an art teacher. All it has to be is someone who's got an excellent evaluation and is willing to do that. I suppose they could probably have even said to one of their teachers, we want you to do this. So when you say they could never dismiss somebody if they can't find a consulting teacher, I don't even think the school district would tell you that they couldn't find a consulting teacher. I mean, they did in this case. They just found somebody who wasn't willing to do the job of a consulting teacher. She also told them that the only time that she would be even available to come over to the school was when she had a teacher institute day, which are few and far between. She told them that she didn't want to participate in the evaluation process. She didn't want to attend any of the pre- or post-conferences. They knew that she hadn't been over there, and yet not only didn't they tell Mr. McDonald that she didn't want to participate, and not only didn't they try to encourage her to participate, but they didn't attempt to replace her when they found out that she wasn't willing to do these things. They just sat on the information. We found this out on the back end when we're trying the case. The hearing officer, although he was concerned about this thing, seeks to place the blame on Mr. McDonald for not doing more to try to encourage the consulting teacher to participate. I would say that really that's placing the responsibility on the wrong person. But in fact, Mr. McDonald was the only one who really made any effort at all to try to get her to participate. First of all, he waited about halfway into the remediation period, when the consulting teacher had had no participation at all, before he stepped up and said, I'll take this on myself to try to get her involved. Then he went over to the school district where she taught. He talked to her principal. He gave the principal eight days where she could potentially come over. Then he went to the consulting teacher and he told her what he had done. Then he went back to his principal and told his principal what he had done. It seems like a pretty compelling argument. It was made to the hearing officer. Why did the hearing officer reject it? I can't tell you beyond what he says in there, in that he places his responsibility on Mr. McDonald and says that Mr. McDonald didn't do enough. But you've got to remember, Mr. McDonald couldn't compel her to come over there. What is our standard for reviewing the hearing officer's decision in fact pointing? I think this is really a mixed question of law and fact. I think we're on a clearly erroneous standard here. I think that's the standard for review. There's no question of what he did. It's a question of whether that somehow excuses the board from not doing what they're compelled to do by statute. Mr. McDonald couldn't release the teacher from her class, he couldn't compel her to come over there, and he didn't have the authority to hire a substitute to watch her class when she did. So I would say that Mr. McDonald did more than his job, and the school district clearly didn't do their job as required by statute, the administrative regulation, their own evaluation plan, and the remediation plan. The third procedural thing that I want to talk about is the length of the remediation plan and the spacing of the evaluation. The statute requires, and the remediation plan, both require that you have a remediation plan of 90 school days where students are present with evaluations every 30 days. And the reason for this is to give a sufficiently long period of time to correct the unsatisfactory evaluation with evaluation spaced so that you can get feedback and actually correct any deficiencies that might exist. Now, there is a dispute as to when the remediation period began. There's no question about that. The hearing officer found that the remediation period began on October 31, 2008. We would say to the court, that is an impossibility. And it's an impossibility for the following reason. Mr. McDonald met with the administration on October 31, 2008 for the first time to discuss the remediation plan, something that's required by statute. There has to be consultation with the consulting teacher, the administration, and the teacher. A number of matters were discussed. Some of those suggested changes were incorporated in the final plan. Some were not. But what's absolutely certain is that there was no final remediation plan available for Mr. McDonald on that day. The superintendent said that he would take it back and make the corrections, and that he would then get it to Mr. McDonald. There's a dispute, once again, about when he got it to Mr. McDonald. Mr. McDonald says that the first time he received it was November 21, and it's clear that it was signed by all parties on December 8. While we agree that signature is not required, I believe that it's the best indication that the delivery had been accomplished, as well as the consultation between all three parties. We believe that that's the starting date. I notice my time is about to run out. It has run out. And I apologize. No, that's okay. Good afternoon. May it please the court, counsel. My name is Susan Nicholas, and I'm here for the Board of Education of Pawnee Community Unit School District Number 11. One of the most important things to point out to begin with is that Mr. McDonald was dismissed for a failure to complete a remediation plan with a rating of satisfactory or better, and this is pursuant to 24A5 of the school code. That incorporates, then, Section 2412. But to start out, we have a disagreement of what even level of cause, so to speak, is appropriate in this case. Mr. McDonald, in his brief, repeatedly cites the definition of cause for a causal dismissal, which does exist in 2412. Our position, however, is that Article 24A of the school code is a separate definition of cause, that the failure to complete the remediation plan with a rating of satisfactory or better constitutes cause for purposes of a dismissal under the school code. And that definition has been recognized by the court in Spangler as well, and they effectively said that the definition of cause doesn't matter in this context. While it does trigger the procedures under 2412, the definition of cause itself is different. It is the failure to complete the remediation plan with a satisfactory or better rating. Now, moving on, it is accurate that the school code states that within 30 days of an unsatisfactory evaluation rating, a remediation plan needs to be designed to correct deficiencies in the teacher. However, 24A5 also provides that failure to strictly comply with the time requirements does not invalidate the remediation plan. And I feel the need to correct a couple of things about the record that were stated by opposing counsel. The fact is, immediately after that unsatisfactory rating, a letter went to the Pawnee Education Association, the local bargaining unit for the school district teachers. And in that was a request for recommendations for a consulting teacher. And part of the reason that's done is because the administrative code requires that they be asked. It directs that when looking for a consulting teacher, the bargaining agent also be given the opportunity to give names. That said, that happened June 2nd, immediately after the unsatisfactory evaluation. Then, in the middle of June, the superintendent sent an email to area superintendents asking for recommendations or assistance. Again, still seeking to find someone qualified to be the consulting teacher. The consulting teacher has to meet certain requirements under the school code. And one of those is that they have to have an excellent evaluation rating in their last evaluation. Now another important thing to point out is when the Pawnee Education Association responded to the request for names, they insisted that no teacher in the district be the consulting teacher. So, the administration, in an effort to work with them, continued to look for a consulting teacher. Well, you say they insisted. Did the administration have to follow that insistence? Or comply with it, I should say? Arguably, no. But you were just trying to accommodate. Yes. Yes. Now, that said, there's also a requirement under the administrative code that if the district is going to seek a consulting teacher from the roster at the State Board of Education, they also have to contact the regional superintendent to seek a roster from the regional superintendent. The superintendent did so. And at that time learned that the regional superintendent had no roster and was directed to talk to the State Board of Education, which he did. He contacted the State Board of Education and learned at that point in time the State Board of Education, despite the fact that the statute requires it, has no roster of consulting teachers. So, this isn't a case where the district wasn't trying to comply with the statute and trying to get the consulting teacher from the places where the statute directs the administration to go. The superintendent did those things and had absolutely no success. He was then referred by the State Board of Education back down the ladder to talk to the regional superintendent and talk to other superintendents in the area. And that is eventually how they found a qualified consulting teacher. That said, yes, they went beyond the 30 days. There's no question about it. But, despite the reliance of Mr. McDonald on the, and I believe it's pronounced Bukna, but I won't swear to it, case, that is not controlling here. That case specifically dealt with the situation of a district not using the appropriate evaluation ratings that were mandated by the school code. In fact, the court in that case referenced the language regarding the timeline not invalidating remediation plan and saying that doesn't apply to the evaluation ratings used. Basically directing, had the legislature wanted to provide some kind of exception for this, they would have done it like they did here. So that case is not at all in point and specifically does not address timeline. Isn't it? I mean, we know that. And we know this isn't mandatory. So it's the amount of time. Yes. And, you know, it's pretty long in this case. And you suggest, you know, one thing is you're trying to find the evaluating teacher. Another thing is it's the summer months. And that's a fact. What's the end product? I mean, what's the outside date? And it's really not defined anywhere, to be honest. But we're going to end up defining it. We're going to say that it was okay in this case or it was not. And what I would suggest is there are two issues that need to be considered in making that decision. The first is it was summer. And in the summer, the schools slow down. Teachers are not easy to reach. Administrators are on 12-month contracts. That's true, but teachers are not. No. And it's a consulting teacher that was necessary here. There could be no progress on a remediation plan without a consulting teacher being named? Well, the way the statute is written is that the consulting teacher actually should be participating in creating the remediation plan. So I would say, yes, it is envisioned by the statute that until that consulting teacher is in place, the remediation plan can't commence. It seemed to me that Mr. Lowenstein was implying that the school district should have no problem in finding a consulting teacher. Do you agree with that? Well, I would say obviously not because there was significant difficulty in finding a consulting teacher. It's not just plucking any teacher out of a district that you want. They have to meet the specific criteria. I understand that. Was the consulting teacher ultimately selected the only one that was deemed qualified? Earlier on toward the end of summer, they had gotten a lead on another possible consulting teacher that would be qualified. Unfortunately, that person never called them back. So I don't want to say there are no other teachers anywhere that are qualified. Obviously, there was, but that consulting teacher also has to be willing. Are you saying that possible consulting teacher was contacted and did not respond to the call or return a letter? Correct. Okay. Correct. This was the first consulting teacher, the first person qualified to be a consulting teacher, that was qualified to participate and willing to do so. The first that the district found. Now, with regard to the consulting teacher's participation, the consulting teacher has a position where they provide advice to the teacher who is rated unsatisfactory on how to improve teaching skills and to successfully complete the remediation plan. Now, there has never been a specific definition of exactly what the consulting teacher must do. It's not in the statute. It's not in the regulations. There's no requirements of visits going either direction. It's basically that very vague definition of how to improve teaching skills and successfully complete the remediation plan. Now, that said, again, it's important to look at the facts here. Mr. McDonald was advised repeatedly to go see his consulting teacher again. After each evaluation, it was suggested that he go visit Mrs. Howard. And he didn't do so. He visited her two times in total, once prior to the remediation plan even going into effect, before the district was even aware of Mrs. Howard, and once after. And then he disregarded the remaining suggestions that he go and visit his consulting teacher. Now, with regard to her visit, setting aside there's nothing in the record that says that the only reason it came up in February was because Mr. McDonald had never heard anything about it, he indicated that he wanted her to come visit his classroom. Mrs. Wilson, the administrator, asked if he would like her to make those arrangements, and he insisted that he wanted to do so. And she agreed to that and asked that he keep her up to date on what was happening. He then went over to Auburn, where Mrs. Howard taught, talked to the principal of Auburn, who was in no way a participant in the remediation plan, gave him eight dates that he would like for Mrs. Howard to come visit, then went up to Mrs. Howard's classroom, told her, hey, I talked to your principal, this visit might be happening, will you come judge the art show? He testified he never told her the dates he had in mind. And then he went back to Pawnee, where he never told any of the administrators there the dates he had in mind. Mrs. Howard did, in fact, come to judge the art show, and she came early, she came before the end of the school day, and observed. Then, after the art show, she left. Mr. McDonald apparently did not believe that that was an observation, but he never talked to anybody about it. He never complained to the administrators, he never talked to his consulting teacher about it, and he never even talked to the principal at Auburn. He thought as soon as he told the Auburn principal the dates he wanted Mrs. Howard to come visit, that was it. That was all he had to do, and then it was his responsibility. But the fact is, the principal testified that, to her knowledge, Mrs. Howard had come to visit. She did not know until after the remediation plan was over that Mr. McDonald did not consider that a real visit, a real classroom observation. So, this isn't a case where anyone in the district even made an attempt to interfere with this. They repeatedly suggested that Mr. McDonald meet with the consulting teacher. He, however, did nothing to tell them if he was having problems and what those problems were. And, he was a participant, a primary participant in the remediation plan. He has an obligation to participate as well. In addition, the suggestion that Mrs. Howard was never notified of the evaluation ratings was also contradicted by the testimony. Mrs. Wilson testified that they discussed on the telephone the results of the evaluations and what appeared in those evaluations. Again, there is no definition in the statute or elsewhere as to how these consultations take place. Only that they do, and that evidence was uncontroverted. With regard to the duration of the remediation plan, as suggested, the school code requires that it last 90 school days with evaluations every 30 school days. And, what Mr. McDonald has suggested was, well, there's absolutely no way it could have gone into effect and began on October 31. However, there is no requirement in the school code or elsewhere that a remediation plan be signed by all the parties. There's not a requirement that a remediation plan be agreed to by all the parties. Only that the parties consult. And when they met on October 31, Mr. McDonald was presented with the remediation plan and he requested changes. And the district agreed to those changes. Every single change that was made from that October 31 meeting was a suggestion by Mr. McDonald. What's more, Mr. McDonald testified that on that date, he knew what the plan said, he understood the terms of the plan, and it had been discussed that it would start that day. And he understood at that point that the district accepted his changes? Yes. Yes. How closely does the remediation plan track or can you compare it to those deficiencies that had already been identified? And let me just make sure I'm understanding your question. The initial unsatisfactory evaluation. The remediation plan was drafted based on the unsatisfactory evaluation that triggered the remediation. So some of the headings or the language or the points would be essentially the same? Yes. Or closely tracked? Yes. And the way the remediation plan was organized was besides setting it out according to the specific categories that were required by the school code, student management, instructional management, and so forth, there was then a description of the problems that had been noted in the prior evaluation. And then directly below that was the remediation that was necessary. So it was virtually entirely based on the unsatisfactory evaluation. What does the record show regarding how the consulting teacher that was eventually designated participated? What role did she play in writing it? Actually, when it was being drafted, the superintendent designated who contributed what aspects of the remediation plan by font. So the elements of the remediation plan that are in bold are those that were suggested by the consulting teacher. So yes, she did contribute to the creation of the remediation plan. With regard to the evaluations being spaced precisely 30 days apart, the language of the Act states that there should be evaluations once every 30 school days. That is typically read to mean within each 30 school day period there is at least one evaluation. And there are several reasons for that. Especially in this case, Mr. McDonald assisted in selecting the lessons that he wanted observed. He wanted it to be a new lesson where he was doing, from the beginning, that particular art project. So you might be evaluated the first week of March and then not evaluated until the last week of April. Assuming that... That would be more than 30 days apart, but it would be within... You got an evaluation every 30 days. Correct. Admittedly, counting the 30 school days doesn't make it read the way a calendar would read. It's just a different method of counting. However, to say that it's implicit, that there must be 30 school days apart, that's virtually impossible. And when you look at the case law, it's something that's never been specifically interpreted. No case says it means this or it means that. But if you read through the cases and look at their analysis, for example, in Spangler, it appears that that tends to be the common interpretation. That, yes, there was at least one within this 30 days, one within this 30 days. And I would note a couple of other things. The first being that the final three evaluations were approximately 30 days apart. He had four evaluations, so he had more than just one each 30 school day period. Second, the evaluation that fell in the first evaluation period, the first 30 day period, while Mr. McDonald suggested it was too early to really get a fair evaluation, that was his best one. And again, there's nothing that requires that it fall at the end. After the consulting teacher was located, how much time lapsed before the remediation plan went into effect? The consulting teacher was located and determined to be qualified in mid-October, and the evaluation remediation plan went into effect October 31. So a couple of weeks. About two weeks, yes. Now, finally, and just to touch on one other issue, there was also complaints that the school district did not assist Mr. McDonald in any other way. And part of that comes out of the language in the remediation plan itself, that the district will offer him assistance. However, a look at the record contradicts that allegation as a whole. Each evaluation and post-observation conference gave repeated suggestions to Mr. McDonald on how to improve, pointed out deficiencies that weren't occurring in the classroom. And the response was either to argue with the evaluator, or in one case the evaluator walked away with the impression that Mr. McDonald did not understand what she was saying. However, that doesn't mean they weren't attempting to offer assistance. They were pointing out deficiencies. Even, and I'm out of time. I've got a couple of questions. In one sense, maybe they're points. I am unable to comprehend having a teacher in the classroom that the administration has said is an unsatisfactory teacher. And letting them teach my child from the third week of August to October 31st without there being a plan of remediation in effect. I simply cannot understand that. And I do not know if it is because I'm naive or I'm diversed or too disengaged with the real world. Because some of the things that you've suggested are understandable. But it would seem to me as if, maybe I'll ask this question anecdotally. How many teachers in that district got an unsatisfactory rating and needed remediation plans during that school, that year, at that time? I believe only Mr. McDonald. I don't detect any sense of urgency from the record for anything to happen. And again, I guess that isn't a question. It's an observation. I don't know if you want to make a response to it. The only response is, the fact of the matter is, until a consulting teacher that's qualified under the statute is located. Well, it seems to me that's what the sense of urgency then should have been about. If I was a principal and I was prepared to issue that unsatisfactory rating, I would make it my business to make sure that that remediation plan went into effect for one of two reasons. I want to get rid of this guy and I don't think he can meet the remediation plan. Or he's worthwhile, I want to keep him, he needs help. Either one of those requires urgency. One requires urgency to get him out of the classroom. One requires urgency to restore him to the good standing that he apparently once had. And I guess the other thing I would say, with respect to your concern about that period of time, and I believe his attorney pointed this out as well, Mr. McDonald actually did some things during that time, including contacting, who eventually ended up being his consulting teacher, in an attempt to make some improvements himself. So, while at that point she was not his consulting teacher, he had also made the district aware that he was speaking with someone out of the district to get some help and seek some tips and things along that line. But, when it comes down to it, the remediation plan itself could not begin until a consulting teacher was located. Thank you. Thank you. Rebuttal please. So many points, so little time. Let me begin by just addressing the point that you just made. One of the reasons, I am sure, for setting forth that you've got to have the remediation plan within 30 days is exactly the kind of thing that you were pointing out. So, even though there's a language in there about not requiring strict compliance, it doesn't mean that there doesn't have to be any compliance. And there wasn't any urgency in this case. And the fact that they even offer the fact that, well, it was over the summer, so that made it more difficult. Let's remember, they decide the date on which they complete the evaluation and when they presented it to them. He was there the whole school year, during 2007-2008. They could have completed an evaluation earlier, or they could have waited until the first day of the following school year to give him the evaluation. They're the ones who decided to give it to him on the last day of school. And if it complicated their difficulty in getting a consulting teacher, certainly that should have been something that they took into consideration. I want to make sure I understand that. You're saying it would have been okay for the district to have known in May that your client had been evaluated as unsatisfactory, but not provided that information to your client up until almost September when the new school year started? Well, I don't know. I don't remember, quite honestly, what the evaluation plan says with respect to that. But they do decide when they do the evaluation. They do decide how long it takes to complete the evaluation and actually give it to the teacher. They certainly could have done this in March, if they wanted to, and give it to him. They could have done an evaluation at the beginning of September and given it to him at that point. So to say that it made their life more difficult because they decided to give it on the last day of school... That's a tough management decision in terms of maybe you saw periodic periods of improvement, and finally it just came to the point where you thought, no, I have to issue this rating. And if you don't decide that until May, you can look back over your shoulder and say, I wish I would have decided this in March to get it off the board or to get it started. But instead, I don't decide it until I'm a principal and I've got my forehead in my hand and I think, I've got to issue this rating. I don't want to, but I've got to. So that's just as plausible as it being strategic. They do this every year. They know what the situation is. These are not novices in the sense the superintendent had been the superintendent before. He's on a 12-month contract. It's not a very good excuse. Nor is your client a novice. In the same remarks that I made to the school district, I think if any one of the three of us, or if you or counsel, got that unsatisfactory evaluation, I'm sure there would have been a sense of urgency on our part to make sure that that plan got written and implemented. And I understand you indicated your client did some things. Yeah, he did a lot of things. But I couldn't tell a lot of what was going on during the early part of the school year in terms of saying, where is my remediation plan? I would have been on that principal's doorstep. I'm personalizing. I would have been there every day saying, when am I going to get that plan? When am I going to be able to go forward? When am I going to get some additional help? When am I going to get a sink in my room? When is my room going to get moved back so that there's a satisfactory one that I can use for art projects? Excellent point, and we did that. The association, his representative had meetings over the summer with the superintendent to discuss some of these various things, as did my client at meeting with the superintendent over the summer. He did do a number of things to try to satisfactorily complete the deficiencies which they believed that he had. The other thing, going on to a different point, unless I haven't answered your question. You have. I was just preaching anyway. I wasn't really asking a question. I think that it goes to how long do we have to wait to do our job here, which was one of the points you made earlier. The real question is how long do the students have to wait for both sides to do their job? That's really the pert question. There wasn't anything that we could do more than what we did. With respect to the requirements for a consulting teacher, clearly the requirements for a consulting teacher are laid out in statute, regulation, remediation plan, and evaluation. Take a look at page 17 of our brief, and I lay them out and refer back to the document, which requires what the consulting teacher is supposed to do. It was actually Mr. McDonald that found the consulting teacher for them. In an effort to improve his teaching, he sought out help, including locating Mrs. Howard and going over there to observe her classroom, not once but twice. Once before she was even selected, and once after. I note my time is up, so thank you very much. Thanks to both of you. The case is submitted and the court stands in recess.